**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James E. BAKER, Defendant–
Appellant.**

No. 07–3002.

United States Court of Appeals,
Tenth Circuit.

Feb. 28, 2008.

John K. Henderson, Jr., Assistant Federal Public Defender, Office of the Federal Public Defender for the District of Kansas, Wichita, KS, appearing for Appellant.

Matt Treaster, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Wichita, KS, appearing for Appellee.

Before TACHA, Chief Judge,
HOLLOWAY, and MURPHY, Circuit
Judges.

**ORDER**

Appellant's petition for rehearing is denied. Judge Holloway would grant panel rehearing.

The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. A poll was called on the suggestion for en banc rehearing. The poll did not carry. Consequently, the request for en banc rehearing is denied. Judge McConnell dissents from the denial of the en banc rehearing. A copy of his dissent is attached to and incorporated into this order. Along with Judge McConnell, Judges Briscoe and Lucero voted to grant en banc consideration.

McCONNELL, J., dissenting from denial of rehearing en banc:

The panel holds categorically that defendants charged with the crime of being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1), may not invoke the affirmative defense of "innocent possession." This means, for example, that a felon who spots ammunition on a playground and who picks it up for the purpose of conveying it to a responsible law enforcement authority, could be held guilty of the crime. That is a sufficiently important and troubling result that it warrants en banc review. Moreover, the logic of the decision suggests that federal courts may not recognize any unstated affirmative defense to a crime involving "knowing" possession of contraband beyond the narrow compass of defenses already recognized. Not only does the specific result conflict with a decision of the District of Columbia Circuit, but the broader reasoning is in tension with a recent Supreme Court decision.

The District of Columbia Circuit has held that a defendant may invoke the innocent possession defense to the charge of illegal possession of a firearm when he meets two requirements: "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—*i.e.*, in light of the circumstances presented, there is a good

basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." *United States v. Mason*, 233 F.3d 619, 624 (D.C.Cir.2000); *see also Bieder v. United States*, 707 A.2d 781, 783–84 (D.C.1998); *People v. Hurtado*, 47 Cal. App.4th 805, 54 Cal.Rptr.2d 853, 858 (1996). According to that court, the innocent possession defense "is necessarily narrow," and thus does not offend "the legislative purpose underlying § 922(g)(1)" of "keeping guns out of the hands of convicted felons." *Mason*, 233 F.3d at 624–25.

The panel opinion reached a contrary conclusion to that in *Mason*, primarily on the ground that the innocent possession defense is inconsistent with the statutory mens rea requirement of knowledge. "[B]y prohibiting knowing possession, the statute does not invite inquiry into the reason the defendant possessed the ammunition, as long as the defendant knew it was ammunition he possessed." *United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir.2007). *See also id.* (making felons-in-possession guilty whenever they knowingly possess a weapon, without regard to how or why they came into possession or for how long possession was retained, is "precisely what Congress envisioned by prohibiting knowing, as opposed to willful, possession of ammunition."). The panel further reasoned that to recognize the defense "would expand the necessity defense," whereas the Supreme Court "has called into question the validity of the narrower necessity defense." *Id.* at 1326 (citing *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 490, 121

S.Ct. 1711, 149 L.Ed.2d 722 (2001) (calling it an "open question whether federal courts ever have authority to recognize a necessity defense not provided by statute.")).

In its more recent decision in *Dixon v. United States*, 548 U.S. 1, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006), however, the Court implicitly resolved this open question, providing a justification for judicial crafting of common law defenses. With reference to the Safe Streets Act, which is the same statute at issue in this case, the Court stated that even though Congress did not mention any common law affirmative defenses, "we can safely assume that the 1968 Congress was familiar with ... the long-established common-law rule" and that "[i]n light of Congress's silence on the issue, ... it is up to the federal courts to effectuate the affirmative defense of duress as Congress may have contemplated it in an offense-specific context." *Id.* at 2446, 2447 (internal quotation marks omitted). Despite the lack of any statutory reference to the duress defense, the Court assumed the defense was available, noting that the Court has "previously made this assumption when addressing common-law affirmative defenses" in several prior cases. *Id.* at 2445 n. 7. *Cf.* Frank H. Easterbrook, *The Case of the Speluncean Explorers: Revisited*, 112 Harv. L.Rev. 1913, 1913–14 (1999) ("All three branches of government historically have been entitled to assess claims of justification—the legislature by specifying the prohibition and allowing exceptions, the executive by declining to prosecute (or by pardon after conviction), and the judiciary by developing defenses.").[1]

---

1. The Fourth Circuit has suggested that the innocent possession defense is distinguishable from other affirmative defenses that are more deeply rooted in Anglo–Saxon common law. *United States v. Gilbert*, 430 F.3d 215, 219 (4th Cir.2005). *But see Dixon*, 126 S.Ct. at

2448 (Kennedy, J, concurring) (stating that courts may also look to newer and "innovative" sources that reflect the "insight gained over time as the legal process continues"). The extent to which unstated affirmative defenses should be limited to those rooted in

Moreover, the *Dixon* Court made clear that the existence of an affirmative defense is not affected by whether the statutory mens rea is "knowing" or "willful." At issue in *Dixon* were two firearms-related offenses, one of which (18 U.S.C. § 922(a)(6)) required that the offense be "knowing" and one of which (18 U.S.C. § 922(n)) required that the violation be committed willfully.[2] The Court did not differentiate between the statutes for purposes of imputing an affirmative defense of duress. Rather, the Court explained that "[l]ike the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability ... because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" 126 S.Ct. at 2442 (quoting *United States v. Bailey*, 444 U.S. 394, 402, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)) (ellipses in original). Thus, "even if we assume that petitioner's will was overborne by the threats made against her and her daughters, she still *knew* that she was making false statements." *Id.* at 2441 (emphasis in original).

So too with the affirmative defense of innocent possession. The affirmative defense does not serve to negate the necessary mens rea, but to excuse the crime even though the defendant was in knowing possession of the ammunition. The panel's reasoning that the mens rea element of knowledge demonstrates a congressional intention not to recognize the affirmative defense is therefore inconsistent with *Dixon*.

As this case illustrates, the current state of our jurisprudence regarding implicit affirmative defenses is in disarray. We recognize the affirmative defenses of necessity and duress despite the lack of textual basis in the statute, but invoke the lack of textual statutory basis as a reason for refusing to recognize other affirmative defenses of seemingly equal importance. *Baker*, 508 F.3d at 1325–26. At a time when the Supreme Court was cautioning that the authority of federal courts to craft such non-textual defenses was an "open question," *Oakland Cannabis Buyers' Co-op.*, 532 U.S. at 490, 121 S.Ct. 1711, we might well have been justified in drawing the line at the defenses we had previously recognized, and creating no more. *See United States v. Patton*, 451 F.3d 615, 638 (10th Cir.2006) (McConnell, J.) (declining to recognize a broader version of the necessity defense, partly on authority of *Oakland Cannabis Buyers' Co-op*). But now that the Supreme Court has resolved that Congress enacts criminal statutes against the background of unstated common law defenses, which the federal courts are charged with putting into effect, *Dixon*, 126 S.Ct. at 2447, it is time for us to reexamine this field and determine the applicability of common law defenses in a more coherent and consistent fashion. This case would have provided an excellent opportunity to do so.

---

long-established common law tradition is one issue we would have to consider if we reheard this case en banc.

**2.** The latter mens rea requirement is contained in the relevant sentencing provision, 18 U.S.C. § 924(a)(1)(D), rather than in the definition of the crime itself. *See Dixon*, 126 S.Ct. at 2441 n. 3.